# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* N. MILLER, Minor.

UNPUBLISHED
August 14, 2018

No. 341344
Calhoun Circuit Court
Family Division
LC No. 2015-003494-NA

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

The circuit court terminated respondent-mother's parental rights to her two-year-old daughter, NM, based on respondent's continuing drug use and untreated mental health issues. Respondent failed to benefit from services and refused offers to provide more intensive assistance. We affirm.

## I. BACKGROUND

Respondent was 16 years old when she gave birth to NM. By that time, respondent had received multiple mental health diagnoses, including bipolar disorder, borderline personality disorder, anxiety, and post-traumatic stress disorder. In the first six weeks of NM's life, Child Protective Services (CPS) was contacted five times. Respondent had physically assaulted both of her grandparents, her younger brother, and NM's father. When respondent attacked her boyfriend, she was holding the baby. Respondent had also threatened to commit suicide and abandon NM if her boyfriend ended their relationship. As a result of these conditions, the Department of Health and Human Services (DHHS) filed a petition to take NM into care.

Respondent admitted to several grounds in the petition, including that she was arrested twice for physically assaulting her grandparents and had been diagnosed with several mental health disorders. The DHHS initially placed NM in nonrelative foster care. However, upon respondent's plea, the court returned NM to respondent's custody on the condition that respondent live with her mother. Three months later, the DHHS filed an emergency petition to remove NM from respondent's care. Respondent's mother had evicted her and she was then homeless. Respondent reported that she did not feel safe living with her mother but also admitted that she did not have the means to care for her child.

A month later, the court noted that respondent was not complying with her case service plan and given respondent's young age, changed the goal from reunification to adoption. The court held a termination hearing on January 10, 2017, but had a change of heart. The court then

-1-

allowed respondent additional time to comply with and benefit from services. The court again noted respondent's young age, but also cited respondent's problems with Medicaid rendering her ineligible for certain services and her past attempts to comply with services.

Another five months later, however, respondent admitted to refusing to take her prescribed psychotropic medications. Respondent instead self-medicated with marijuana. She had lost a part-time job at McDonald's and was working at a strip club. During her employment, she attempted to buy a drug called Molly from a coworker, who gave her methamphetamine instead. Respondent then added meth addiction to her list of troubles. Additionally, respondent had physically assaulted her younger brother, biting him on the chest and drawing blood. As she was then an adult, respondent was placed on the central registry for child abuse.

Throughout the proceedings, respondent was assisted by case worker Breanna Kevil. Kevil worked closely with respondent because of her young age and mental health issues. She personally contacted service providers on respondent's behalf. She tried to convince respondent to get her GED, but respondent declined. Kevil even drove respondent to parenting sessions and other appointments. Despite respondent's completion of parenting classes, Kevil noted no real improvement in her interactions with NM during supervised parenting time. Respondent once cried for 12 minutes while NM watched. On another occasion, respondent told young NM that she was going to take her away. Ultimately, the parent-child bond was "not good." NM tried to escape the room during visits and would cry inconsolably. On the night after visits, NM would scream, pull out her hair, and scratch herself. As a result of these difficulties, the court suspended parenting time in July 2017.

Kevil and other service providers also tried to assist respondent in other ways. Kevil repeatedly warned respondent that her Medicaid benefits were set to expire and attempted to help her fill out her paperwork, but respondent refused. She refused additional offers of help from three separate service providers to restart the Medicaid process. Throughout the proceedings, respondent declined to attend substance abuse counseling. Respondent missed the majority of her random drug screens and when she did appear, she often tested positive for marijuana or meth. She admitted at the termination hearing that she remained addicted to meth but claimed she was attending an outpatient rehabilitation program. Kevil had twice referred respondent to a Transition-to-Independence program, but she was discharged for refusing to meet with her counselors. Respondent declined Kevil's offer to teach her budgeting skills.

Respondent did attend mental health counseling. However, she took her prescribed medication only once and then determined that it would not help her and stopped. Respondent continued to self-medicate with marijuana throughout the proceedings despite that she had not secured her medical marijuana card. At the termination hearing, respondent repeatedly indicated that she would not discontinue using marijuana. Only after repeated questions did respondent agree that she would stop using marijuana if necessary for the return of her child.

The court terminated respondent's parental rights in October 2017, citing respondent's untreated mental health issues and continuing substance abuse. Despite months of services, respondent had shown no improvement in parenting skills and lacked a safe and stable home for herself and her child. Accordingly, the court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j).

## II. STATUTORY GROUNDS

Respondent challenges the evidentiary basis for terminating her parental rights. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). We review a circuit court's factual finding that a statutory termination ground has been established for clear error. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

In terminating respondent's parental rights, the court cited MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The DHHS supported termination under factor (c)(*i*). NM had been in care for nearly 18 months by the time of the termination trial and respondent had been receiving services for almost two years. Despite these services, the conditions that led to adjudication persisted. Respondent still declined treatment for her severe mental health issues. Respondent refused to take her prescribed medication and instead self-medicated with marijuana even though she did not possess a medical marijuana card. Respondent continued to exhibit angry outbursts as a result of her untreated mental health issues and had been placed on the central registry for physically attacking her younger brother. And respondent had become addicted to meth during the

-3-

proceedings, exacerbating rather than eliminating the substance abuse problems that led to adjudication.

Termination was further supported under factor (g). Respondent incorrectly cites a newly amended version of this statutory factor that did not take effect until June 12, 2018. See 2018 PA 58.[1] At the time of respondent's proceedings, a parent's intent in failing to provide adequate care and custody for his or her child was irrelevant. The record evidence supports that respondent had not provided proper care and custody for NM and would be unable to do so within a reasonable time. Respondent had custody of NM for the first six weeks of her life, but was unable to adequately care for the child given her untreated mental health issues. Respondent's refusal to accept mental health treatment led to her eviction from her mother's home and the re-removal of NM from her care. Respondent continued to refuse to take her prescribed medication and instead used marijuana. Although respondent attended parenting classes, she exhibited no benefit. As a result, respondent's supervised parenting time sessions continued to go badly and were ultimately suspended. By the time of the termination hearing, respondent was still substituting marijuana for her prescribed medication, was still addicted to meth, and had yet to benefit from mental health and substance abuse counseling. Accordingly, the court did not err in finding that respondent would be unable to provide proper care and custody for her child within a reasonable time.

Finally, termination was supported under factor (j). Respondent had exhibited violent behavior toward her grandparents, her younger brother, and her boyfriend. Respondent attempted to assault her boyfriend while holding NM. As noted, by the time of the termination hearing, respondent still was not taking her psychotropic medication. She had recently assaulted her younger brother. Moreover, respondent continued to use marijuana and remained addicted to meth, ensuring that she would not be able to safely raise her child in the near future.

## III. BEST INTERESTS

Respondent further contends that termination of her parental rights was not in NM's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-357. Relevant factors include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-

---

[1] The newly enacted MCL 712A.19b(3)(g) provides: "The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

being while in care. . . ." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The advantages of the child's foster placement over placement with the parent are a relevant consideration. *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009). The court may also consider the likelihood that "the child could be returned to her parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). At this stage in the proceedings, the best interests of the child in having "a normal family home is superior to any interest the parent has." *Moss*, 301 Mich App at 89.

In finding that termination of respondent's parental rights was in NM's best interests, the court noted that NM was "in an extremely stable home" and that her foster parents wished to adopt. NM had been placed in that home at six weeks old and had only been returned to respondent's care for three months since that time. NM was "thriving in that home" and considered her caregivers to be her parents. The court acknowledged that respondent's focus on her child was likely the only thing preventing her from completely "spiral[ling] downward." However, the court correctly noted that the focus in the best interest determination is on the child and not the parent. Respondent had not complied with her service plan, had not addressed her mental health issues, and remained addicted to marijuana and meth. Given this record, we discern no error in the lower court's conclusion that termination of respondent's parental rights was in her daughter's best interests.

## IV. ADEQUACY OF SERVICES

Finally, respondent contends that the DHHS failed to provide adequate reunification services. The right time to object to the adequacy of services is when those services are provided. *Frey*, 297 Mich App at 248. In this case, however, the DHHS did provide adequate services, despite respondent's failure to object or to request more in-depth assistance.

"Reasonable efforts to reunify the child and family must be made in all cases" except under certain circumstances not present in this case. MCL 712A.19a(2). When a parent suffers from a disability, the DHHS must make "reasonable modifications to the services or programs offered" to accommodate that disability and give the parent an opportunity to benefit and succeed. *In re Hicks/Brown*, 500 Mich 79, 86; 893 NW2d 637 (2017). The DHHS met its burden in this case.[2]

Kevil testified that she went above and beyond to assist respondent in complying with her service plan and achieving her goals. Kevil recognized that respondent was extremely young and suffered from several mental health conditions that impaired her ability to singlehandedly tackle her plan. Kevil contacted service providers on respondent's behalf, attempted to help her find housing, and personally drove her to parenting time sessions. Kevil and other service providers offered on several occasions to provide additional in-depth assistance with completing tasks, but respondent refused. Although the DHHS "has a responsibility to expend reasonable

---

[2] We note that the court also recognized respondent's personal need for more individualized assistance. Early in the proceedings, the court changed the goal from reunification to adoption of NM, but later granted respondent additional time to comply with her service plan.

efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *Frey*, 297 Mich App at 248. The service providers reached out their hands but respondent would not take them.

Ultimately, the DHHS provided respondent with two referrals to TIP, a referral to a parent bonding program, two psychological evaluations, individual counseling, medication reviews, random drug screens, substance abuse services, supervised parenting time, parenting classes, and in-home therapy. Respondent was discharged from multiple services for failure to participate and cooperate. She frequently failed to appear for drug screens and only started substance abuse counseling on the eve of termination. Respondent completed a parenting skills class but showed no benefit. Even with the additional help provided by Kevil, respondent simply did not take her services plan seriously.

We affirm.

/s/ William B. Murphy
/s/ Elizabeth L. Gleicher
/s/ Anica Letica